## Case No. 1,443.

### BISPHAM v. TAYLOR.

[2 McLean, 355.][1]

Circuit Court, D. Indiana. May Term, 1841.

#### UNITED STATES MARSHALS — REPLEVY BOND—ACTION ON — DECLARATIONS — INSUFFICIENT SURETIES.

1. Where the defendant may replevy the judgment, and suspend the execution for six months, a declaration against the marshal and his sureties, which avers that he neglected to make the money, is defective.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

2. In such a case the marshal is not required, absolutely, to make the money.

3. He must make it, unless the judgment shall be replevied. The declaration must negative every presumption of duty on his part.

4. On the replevy bond the marshal is required to take one or more sufficient freehold security. Freehold surety, therefore, must be taken, or the marshal will be liable.

5. If the sureties be not freeholders, however ample they may be considered by the marshal and the public, the marshal is responsible on their failure.

6. In this respect, the statute must be pursued, and, by examining the records, the marshal may ascertain the sufficiency of the sureties offered. To make this examination, would not impose on the marshal an unreasonable diligence.

7. An averment in the declaration that the marshal took insolvent sureties, and not freeholders, sufficient to charge him.

[8. Explained and distinguished in Wetmore v. Rice, Case No. 17,468, upon the question of jurisdiction.]

[At law. Action by Samuel Bispham against Taylor and others upon a bond executed by the defendant Taylor, as marshal, and by the other defendants as his sureties. Defendants demur to its declarations. Demurrer overruled, and leave given to plead over.]

Butler & Morrison, for plaintiff.
Smith & Bright, for defendants.

OPINION OF THE COURT. This action is brought on the bond given by the defendant Taylor, as marshal, and signed by the other defendants, as his sureties. The condition of the bond was, that he would well and faithfully discharge his duties as marshal, &c.

The first count in the declaration, after stating the appointment of Taylor as marshal for the district of Indiana, and the giving of the bond for the faithful discharge of his duties, sets out the obtainment of a judgment by the plaintiff, &c., against Lemuel Pollock, for the sum of seven hundred and three dollars and forty cents, with costs. That the judgment remaining unpaid and in full force, the 29th May, 1839, the plaintiff issued a fieri facias, directed to the marshal aforesaid, commanding him, &c., returnable the first Monday in August ensuing; that, on the execution, the clerk indorsed the same was repleviable, at the time it was issued; which writ was delivered to the marshal in due time; and that, although there was then, and afterwards, at all times before, and until the return day of the writ, divers goods and chattels, lands and tenements of the said Pollock, within the district, whereof the said Taylor, as such marshal, could and might and ought to have made the money so commanded to be made in and by the said writ, of which he had notice, yet he, not regarding the duties of his office as marshal, but contriving, and wrongfully and unjustly intending to injure, &c., the said plaintiff, &c.,

did not, nor would, at any time before the return of said writ, according to the mandate thereof, cause to be made the said sum of money, in said writ named, &c., but neglected and refused, &c., to wit: on the 5th August, 1839, falsely and deceitfully returned the said writ, &c.

The second count stated the judgment and execution, &c., as in the first count; averred that the marshal, not regarding his duty, wilfully, fraudulently and unlawfully, suffered and permitted the said Pollock to replevy and stay execution upon the judgment, for the term of six months, from and after the date thereof, and accepting from the said Pollock a certain pretended replevy bond, which he then and there offered and tendered to the said Taylor, as marshal, aforesaid, with James T. Pollock and James Murry, as his securities, in the penalty of fourteen hundred dollars, made payable to the said plaintiff, conditioned for the payment of the full amount demanded by the said last mentioned writ, together with the interest and costs, &c., at or before the expiration of six months from, &c., which, said writ, was returned the 5th August, 1839. By which proceeding. the execution upon the judgment was stayed, &c. And the plaintiff, in fact, says that said James T. Pollock and James Murry, at the time of the said taking of the said replevy bond by the said Taylor, marshal, &c., were not, nor have they since been, nor are they now, sufficient freehold securities for the purpose of replevying said judgment; but, on the contrary, they and each of them were, and ever since then have been. and still are, wholly insolvent, &c.

The defendants filed a general demurrer.

This replevy bond was taken by the marshal under the 14th section of the act of Indiana, entitled "An act to subject real and personal estate to execution," approved February 1, 1831; which provides that the officer, issuing the execution, shall indorse thereon—repleviable; and the defendant may replevy the same, by tendering to the officer, having such execution in his hands, a bond with one or more sufficient freehold securities, made payable to the execution plaintiff, in a penalty of at least double the amount demanded by such execution, &c. This bond, from its date, has the form and effect of a judgment, and is required to be recorded by the clerk.

The first count in the declaration is, clearly, bad. The marshal was not bound, absolutely, to make the money, and the count is framed upon the hypothesis that he was so bound. He was required to make the money on the execution, unless the defendant replevied it under the statute cited. Now it does not appear, from the first count, but that a replevy bond was given, which would postpone the execution, and all action on the judgment, for six months. And this is not a matter of defence, merely, but of averment in the declaration. The law gave the

right to the defendant to replevy; and to take this bond, and suspend all action on the execution, became as much the duty of the marshal as to make the money, if no bond was tendered. Suppose the execution, upon its face, commanded the marshal to make the money or take the replevy bond, or to make the money, unless the replevy bond should be tendered by the defendant, would an action lie against the marshal without averring, in the alternative, that he had neither made the money nor taken the bond? Either would satisfy the execution, and, consequently, to show a neglect of duty by the marshal, the one alternative, as well as the other, must be negatived. The 14th section of the statute, being binding, is as much a part of the execution, as if its provisions were incorporated in it. And in this, as in every other action founded upon the nonfeasance or misfeasance of a public officer, the declaration must show the right of the plaintiff, and the liability of the defendant.

It is insisted that the second count is, also, substantially defective; that it is not sufficiently averred in it—First: that the original judgment remains unsatisfied; second: that the replevy bond has not been paid; third: that the sureties in the bond are insufficient; fourth: nor that the marshal had notice of the insufficiency or insolvency of the security.

There is no ground for the first and second objections, above stated. The second count, after alleging the material facts in the case, avers that, by reason of which said premises, the said Samuel Bispham has been, and is, wholly deprived of the benefit of the said last mentioned writ and of his said judgment, and of the power and means of collecting the money due thereon, &c. This negatives any presumption of payment, either of the original judgment, or the replevy bond. In fact, the demand is the same on both, and the payment of either would satisfy the plaintiff. The averment would be untrue, if the plaintiff had received the amount of the replevy bond, for that would be a payment of the judgment.

Nor does there seem to be any ground for the third objection to the averment, of the insufficiency of the sureties. The averment is in the words of the statute, that the said James T. Pollock and James Murry, at the time of signing the bond, were not, nor have they since been, nor are they now, sufficient freehold securities, &c.; that they were, and ever since have been, wholly insolvent. It is not perceived how the averment, in this respect, could have been more full than it is. Was it necessary, as insisted in the fourth objection, for the plaintiff to aver that the marshal had notice of the insufficiency of the securities? Under this head, it is contended that the marshal was not bound to warrant the sufficiency of the sureties in the bond; that, if he acted in good faith in receiving those who were apparently sufficient, having no knowledge to the contrary, he is excused. To sustain this

position, the decision in the case of Hindle v. Blades, 5 Taunt. 225, is cited. That was an action against the sheriff for taking irresponsible sureties on a replevin. The statute of 2 Geo. II. c. 19, § 23, required the sheriff to take two responsible persons. And, it was contended, that it was incumbent on the sheriff to select sufficient sureties. The case of Saunders v. Darling, Bull. N. P. 60, where the court say, in such action against the sheriff, some evidence must be given by the plaintiff of the insufficiency of the pledges or sureties; but very slight evidence is sufficient to throw the proof upon the sheriff; for the sureties are known to him, and he is to take care they are sufficient. Mansfield, C. J., said: "I can not think the statute meant to throw on the sheriff this onus. Suppose the sheriff had taken an eminent banker, as surety, a week before his bankruptcy, when no one in the world had the slightest reason to suspect his circumstances. According to the same doctrine, the sheriff would have been liable for taking him as surety." And Mr. Justice Dallas said: "The question is, whether the sheriff, who is bound to take two responsible sureties, has not done so? He makes proper inquires, and finds that these are considered as responsible persons. Is not this sufficient? It can not be that the sheriff should be bound to know that which nobody else knows; and, if the rest of the world trust the surety, it is a sufficient justification to the sheriff." In the case of Scott v. Waithman, 3 Starkie, 168, Chief Justice Abbott said: "The principal question is, as to the responsibility of Maberly. He assented to the law, as stated, that the sheriff was justified in taking a person, as surety, who appeared to the world to be a person of responsibility; but that, if he actually knew that the party was not responsible; or if, having the means in his power of informing himself upon the subject, he neglected to use them, then, notwithstanding appearances, he took the consequences upon himself, and was responsible in the event of the insufficiency of the surety." It would seem from the above cases that, under the British statute, if the sheriff uses the means in his power to ascertain the sufficiency of the sureties, (and they are so generally esteemed,) he is not responsible for their performance. And this, perhaps, is the correct rule on the subject. But, if the sheriff have a knowledge of any facts which should create suspicion of their sufficiency; or, if he neglect to make the necessary inquiries, he will be held liable.

The Indiana statute is, in one respect, materially different from the British statute. By the former, the marshal is required to take one or more sufficient freehold securities. The surety, then, must be a freeholder; and, if the marshal take a man who is not a freeholder, and he shall become insolvent, the marshal will not be exonerated, however sufficient the surety might have been held at the time.

As land titles are required to be recorded,

it is in the power of the marshal generally, if not universally, by examining the proper record, to ascertain who are freeholders, and what liens exist on the real property of the persons offered as sureties. Indeed, it would seem that, by such an examination, it is always in the power of the marshal to take sufficient sureties. The bond, itself, operates as a judgment, and, of course, creates a lien on the real estate of the sureties. To require this examination, would not require from the marshal greater diligence than the rule laid down by Chief Justice Abbott. But, however this may be, it is very clear that it was not necessary for the plaintiff to aver, in his declaration, that the marshal had notice of the insufficiency of the sureties, as contended.

As the second count in the declaration is held to be good, the demurrer must be overruled.

On motion, leave given defendants to plead.

[For the trial, verdict, and judgment in this case, see Case No. 1,444.]